# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VALERIE MCMULLEN, individually and on behalf of others similarly situated,**<br><br>  **Plaintiff,**<br><br>  v.<br><br>**SYNCHRONY BANK, et al.,**<br><br>  **Defendants.** | **Civil Action No. 14-1983** |

## MEMORANDUM OPINION

Plaintiff Valerie McMullen has moved to remand this action to the Superior Court of the District of Columbia or, in the alternative, for limited discovery related to her motion to remand. Defendant JP Morgan Chase & Co. ("Chase") resists remand and discovery, claiming that this Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).[1] Upon careful consideration of the motion and the parties' memoranda,[2] the applicable law, and the record, and for the reasons set forth below, the Court finds that it has jurisdiction under CAFA, but that the local controversy exception may apply.  Accordingly, the Court will deny the motion to remand with leave to renew and will order limited discovery regarding the citizenship of the putative class members.

## FACTUAL BACKGROUND

McMullen, a citizen of the District of Columbia, brought this action against Chase, Synchrony Bank, Wayne Bullen, Karim Steward, One World Fitness, Bullen Wellness, Washington Chiropractic, and several John Does and John Doe Corporations.  One World

---

[1] Defendant Synchrony Bank has joined Chase's opposition to McMullen's motion to remand.  See Not. of Joinder in Def. Chase's Opp'n to Pl.'s Mot. for Remand [ECF No. 16].

[2] Pl.'s Mot. to Remand [ECF No. 12] ("Mot."); Def.'s Opp'n [ECF No. 13] ("Opp'n"); Pl.'s Reply [ECF No. 18] ("Reply"); Def.'s Sur-Reply [ECF No. 19]; Pl.'s Opp'n to Sur-Reply [ECF No. 23].

Fitness is a local health club in Washington, D.C. owned by Bullen and Steward.  McMullen alleges that Bullen and Steward, through One World Fitness and two other District of Columbia companies they owned—Bullen Wellness and Washington Chiropractic—fraudulently took out lines of credit against customers and billed against these lines of credit without the customers' knowledge or authorization.  Synchrony Bank and Chase provided the lines of credit.  McMullen alleges that she is a One World Fitness customer harmed by the fraudulent scheme.

McMullen brought this action on September 12, 2014, in the Superior Court of the District of Columbia for alleged violations of the D.C. Consumer Protection Procedures Act ("CPPA") and for fraud, conspiracy to commit fraud, conversion, and breach of contract.  On October 31, 2014, she filed an amended complaint on behalf of herself and all others similarly situated under D.C. Code § 28-3905(k) (private right of action under the CPPA) and as a class action.  Chase then filed a Notice of Removal, pursuant to 28 U.S.C. § 1332(d), seeking to remove the case to the U.S. District Court for the District of Columbia.  Shortly thereafter, McMullen filed a motion to remand to Superior Court or, in the alternative, for limited discovery.  Chase, joined by Synchrony Bank, resists the remand.  Chase also opposes discovery.

## LEGAL STANDARDS

CAFA was enacted "to amend the procedures that apply to consideration of interstate class actions" to make it easier to establish federal diversity jurisdiction.  Mississippi ex rel. Hood, v. AU Optronics Corp., 134 S. Ct. 736, 744 (2014) (internal quotation marks omitted); see also Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014) ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").  A qualifying "class action" under CAFA is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State

statute or rule of judicial procedure," 28 U.S.C. § 1332(d)(1)(B), in which "the number of members of all proposed plaintiff classes in the aggregate" is at least 100, id. § 1332(d)(5)(B). Because CAFA expanded diversity jurisdiction over CAFA class actions by replacing complete diversity with "minimal diversity," AU Optronics, 134 S. Ct. at 740, federal courts may exercise jurisdiction over a class action where "any member of a class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A).  And in lieu of diversity jurisdiction's general requirement that each plaintiff's claim exceed the sum or value of $75,000, "CAFA grants federal jurisdiction over class . . . actions in which the aggregate amount in controversy exceeds $5 million." AU Optronics, 134 S. Ct. at 740 (citing §§ 1332(d)(2), (d)(6), (d)(11)(A)). In sum, "CAFA gives federal courts jurisdiction over certain class actions, . . . if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." Dart Cherokee, 135 S. Ct. at 552.  The party supporting removal bears the burden of establishing the Court's jurisdiction.  Breakman v. AOL LLC, 545 F. Supp. 2d 96, 100 (D.D.C. 2008).

Even if a court otherwise has jurisdiction under CAFA, however, the statute provides mandatory abstention provisions for actions that involve matters of principally local or state concern.  See 28 U.S.C. §§ 1332(d)(4).  These provisions, known as the local controversy exception and the home state exception, are "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 682 (7th Cir. 2006).  Once a party establishes that CAFA's basic jurisdictional requirements are satisfied, the burden shifts to the party seeking remand to

establish that a CAFA exception applies.  Westerfeld v. Indep. Processing, LLC, 621 F.3d 819, 822–23 (8th Cir. 2010).

**ANALYSIS**

It is undisputed that McMullen has alleged a class action and that the parties are minimally diverse.[3]  Before the Court, then, are only three issues: (1) whether Chase has shown that the putative class has at least 100 members; (2) whether Chase has shown that the amount in controversy exceeds $5 million; and (3) if those two showings have been made by Chase, whether McMullen has shown that CAFA's local controversy exception applies.

## I.     CLASS SIZE

In order for an action to be removable under CAFA, the proposed plaintiff class must consist of 100 or more people.  28 U.S.C. § 1332(d)(5)(B).  CAFA defines "class members" as "the persons (named or unnamed) who fall within the definition of the proposed or certified class."  Id. § 1332(d)(1)(D).

Here, the amended complaint defines the class as former One World Fitness members who received financing from defendant banks and asserts that "[o]n information and belief, there are approximately one hundred One World Fitness customers who received [such] financing."  Am. Compl. ¶¶ 37–38.  Nevertheless, McMullen argues that this action should be remanded because Chase may not rely on her estimate alone and has therefore "failed to identify the size of the class with any certainty."  Mot. at 4.  Indeed, this District Court has held that a defendant's reliance on a plaintiff's estimate of class size alone fails to meet the defendant's burden of establishing jurisdiction on plaintiff's motion to remand.  See Wexler v. United Air Lines, Inc., 496 F. Supp. 2d 150, 155 (D.D.C. 2007).  But Chase does not merely rely on McMullen's

---

[3] Plaintiff McMullen is a resident of the District of Columbia and defendant Chase is a Delaware corporation with its principal place of business in New York.

estimated class size.   Instead, Chase provides a declaration stating that its business records indicate that Chase "financed 367 separate accounts for Bullen Wellness, the entity that allegedly received the funds from Defendant Banks."  Opp'n at 5 (citing Decl. of Kristina L. Ash [ECF No. 13-2] ¶ 3).   Chase explains, moreover, that "[t]his number, while sufficient to support CAFA jurisdiction, understates Plaintiff's proposed class, which also includes customers financed through Defendant Synchrony Bank."  Id. at 6.   Faced with Chase's evidence, McMullen concedes that it "satisf[ies] the CAFA numerosity requirement."  Reply at 5.  This Court agrees: Chase has met its burden to show that the class size in this case meets CAFA requirements.

## II.   AMOUNT IN CONTROVERSY

For CAFA to apply, the amount in controversy must exceed the sum or value of $5 million.   28 U.S.C. § 1332(d)(2).   "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  Dart Cherokee, 135 S. Ct. at 553.  If a plaintiff contests defendant's allegations, however, "§ 1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold."  Id. at 553–54.   "'[T]o determine whether the matter in controversy exceeds the sum or value of $5,000,000,' the 'claims of the individual class members shall be aggregated.'"  Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1347 (2013) (quoting 28 U.S.C. § 1332(d)(6); see also Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 571 (2005) ("CAFA confers federal diversity jurisdiction over class actions where the aggregate amount in controversy exceeds $5 million.  It abrogates the rule against aggregating claims . . . .").

McMullen argues that Chase has identified only $10,710.00 in damages, exclusive of costs and interest, for her. Mot. at 4. She also explains that, under the CPPA, she is entitled to recover treble damages or $1,500 per violation, whichever is greater. Id. Trebling increases her damages claim to $32,130.00. Id. Alternatively, the twenty-four CPPA violations alleged by McMullen multiplied by $1,500 results in statutory damages of $36,000.00.[4] Id. Although McMullen alleges that "the fraud perpetuated against [her] is typical, and representative, of the fraud perpetuated against [the class]," and that she "is similarly situated with, and has suffered similar injuries as, the members of the class she seeks to represent," Am. Compl. ¶¶ 40–41, she argues that the damages suffered by the other class members are currently unknown, so no additional math can be done to determine the amount in controversy without discovery, Reply at 5.[5]

In response, Chase argues that McMullen's alleged damages should be applied to each of the purported class members and then aggregated to find the amount in controversy. Opp'n at 6. Chase therefore multiplied $32,130.00 by the number of putative class members having Chase accounts (367) to arrive at an amount in controversy of $11,791,710.00, which plainly meets the requirements of CAFA. Id.

Chase's calculations are supported by McMullen's statement that she "is seeking relief in the amount of approximately $32,130.00 for each member of the putative class for damages arising from the [l]ocal [d]efendants' conduct." Mot. at 9. Indeed, McMullen cannot argue that the amount in controversy is indeterminable while at the same time conceding that there are at least 367 class members and stating that she is seeking $32,130.00 for each class member. If

---

[4] These damage amounts do not include the compensatory damages sought on behalf of the putative class for the other alleged violations of D.C. law. See Am. Compl. ¶¶ 70, 79, 86, 95.

[5] McMullen requests discovery from Chase and Synchrony Bank in the form of the "application for the line(s) of credit," "promissory note," "sales authorization(s), and/or "purchase authorization(s)," "September 2014 billing statement," and "any document referring to the last known address" for each potential plaintiff. Reply at 7–8.

McMullen is seeking that amount for each member of the putative class, then the amount in controversy is at least $11,791,710.00—well over $5 million. See, e.g., Cannon v. Wells Fargo Bank, N.A., 908 F. Supp. 2d 110, 113–14 (D.D.C. 2012) (explaining that "[t]en violations of the [CPPA] with [statutory] damages of $1,500 per violation for each of the 738 members of the class amounts to a total of $11,070,000—more than double the amount in controversy necessary"); Manson v. GMAC Mortg., LLC, 602 F. Supp. 2d 289, 294 (D. Mass. 2009) (multiplying the class size by named plaintiff's estimated damages to calculate amount in controversy); Wexler v. United Air Lines, Inc., 496 F. Supp. 2d 150, 155 (D.D.C. 2007) (explaining that to determine the CAFA amount in controversy, "the average class member's claim is multiplied by the number of class members").  McMullen has presented no evidence to the contrary.  Based on Chase's evidence of the number of putative class members and McMullen's statement about the amount of money she seeks for each member of the class, it appears that the amount in controversy exceeds $5 million.

Because the class has more than 100 members, the amount in controversy exceeds $5 million, and the parties in this class action are minimally diverse, this Court has jurisdiction over this action pursuant to CAFA.  See, e.g., Dart Cherokee, 135 S. Ct. at 552.

### III.   LOCAL CONTROVERSY EXCEPTION

Of course, "the law is not complete without its exceptions."  Hollinger v. Home State Mut. Ins. Co., 654 F.3d 564, 569 (5th Cir. 2011).  "CAFA requires federal courts to decline jurisdiction over a proposed class action if either of the following narrow exceptions is proven by a preponderance of the evidence: (1) the local controversy exception, 28 U.S.C. § 1332(d)(4)(A); or (2) the home state exception, 28 U.S.C. § 1332(d)(4)(B)."  Id. at 569–70.  Relevant here,

CAFA's local controversy exception[6] "'is intended to respond to concerns that class actions with a truly local focus should not be moved to federal court under this legislation because state courts have a strong interest in adjudicating such disputes.'"  Coffey v. Freeport McMoran Copper & Gold, 581 F.3d 1240, 1243 (10th Cir. 2009) (quoting S. Rep. No. 109-14, at 39 (2005)). Nevertheless, "CAFA's legislative history . . . indicates [that] Congress intended the local controversy exception to be 'narrow,' with all doubts resolved 'in favor of exercising jurisdiction over the case.'"  Woods v. Standard Ins. Co., 771 F.3d 1257, 1265–66 (10th Cir. 2014) (quoting S. Rep. No. 109-14, at 39, 42 (2005)).  Accordingly, where a court has found that the removing party has satisfied CAFA's basic jurisdictional requirements, the party seeking to remand bears the burden of establishing that CAFA's local controversy exception applies.  See, e.g., Westerfeld, 621 F.3d at 823.

There are four requirements of the local controversy exception to federal CAFA jurisdiction:

> [i](I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> (II) at least 1 defendant is a defendant—
> > (aa) from whom significant relief is sought by members of the plaintiff class;
> > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> > (cc) who is a citizen of the State in which the action was originally filed; and
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and . . .
> [ii] during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . .

28 U.S.C. § 1332(d)(4)(A).  "These elements ensure that the exception is invoked when the class is primarily local, the lawsuit is against 'at least one real in-state defendant whose alleged conduct is central to the class claims and from whom the class seeks significant relief,' the

---

[6] CAFA's local controversy exception appears to be a matter of first impression in this Circuit.

injuries the defendant allegedly caused occurred within the forum, and no other similar class actions have been filed against any of the defendants."  <u>Vodenichar v. Halcon Energy Props., Inc.</u>, 733 F.3d 497, 507 (3d Cir. 2013) (quoting 151 Cong. Rec. S999-02, 2005 WL 283380 (daily ed. Feb. 7, 2005) (statement of Sen. Arlen Specter)).

Here, the parties agree that the third and fourth elements of the local controversy exception have been satisfied: the "principal injuries" occurred in the District of Columbia where the action was originally filed, and "no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons" during the three-year period prior to the filing of this complaint. 28 U.S.C. §§ 1332(d)(4)(A)(i)– (ii).  For the exception to apply, then, McMullen bears the burden of establishing that the other two elements are also satisfied: that there is at least one local defendant who qualifies under the CAFA local controversy exception, and that at least two-thirds of the members of the proposed plaintiff class are citizens of the District of Columbia.

A.  <u>Status of Defendants</u>

The local controversy exception requires that there be at least one local defendant from whom "significant relief is sought," and whose "alleged conduct forms a significant basis for the claims asserted."  <u>Id.</u> § 1332(d)(4)(A)(i)(II).  It is undisputed that, for the purposes of CAFA, Bullen is a citizen of Maryland and Synchrony Bank and Chase are also out-of-state citizens.

McMullen asserts that One World Fitness, Bullen Wellness, and Washington Chiropractic are citizens of the District of Columbia because they "were limited liability companies formed under the laws of the District of Columbia with their principal place of business located in the District of Columbia."  Mot. at 8 (citing Am. Compl. ¶¶ 10–12).  In support of her argument, McMullen cites CAFA's definition of a corporation's citizenship, which

provides that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  In response, Chase does not dispute McMullen's factual allegations about where these companies were formed or where their primary place of business is located, but rather argues that One World Fitness, Bullen Wellness, and Washington Chiropractic are limited liability companies—not corporations—and therefore CAFA's definition of a corporation's citizenship does not apply.  Opp'n at 13.  Instead, Chase contends, these companies "carry the citizenship of their members for diversity purposes," and McMullen failed to produce any evidence identifying the companies' members or their members' citizenship.  Id. at 13–14.

What Chase and McMullen have apparently failed to notice is that CAFA specifically provides that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10).  Here, it is not contested that One World Fitness, Bullen Wellness, and Washington Chiropractic each had their principal place of business in the District of Columbia and were organized under the laws of the District of Columbia.  Accordingly, these businesses are citizens of the District of Columbia under CAFA.  See, e.g.,  Cedar Lodge Plantation, LLC v. CSHV Fairway View I, LLC, 768 F.3d 425, 426 (5th Cir. 2014) (explaining that, pursuant to 28 U.S.C. § 1332(d)(10), defendant limited liability companies are citizens of Delaware and Illinois, and noting that the district court incorrectly applied a non-CAFA standard).

As for Steward, McMullen asserts that he "provided a sworn verification in a separate matter pending before this [district court] in which he states that he is a citizen of the District of Columbia."  Mot. at 8 (citing Ex. 1 to Mot., Compl. in Case No. 14-cv-1868 [ECF No. 12-12]).

This pleading is dated October 8, 2014, which was prior to the filing of McMullen's amended complaint on October 31, 2014.  In response, Chase puts forward various documents in an attempt to show that Steward is a citizen of Maryland,[7] but these documents—all of which place Steward in Maryland prior to October 2014—fail to outweigh a sworn statement from Steward himself.

Chase also argues that Steward's citizenship cannot be considered by the Court because he was not served within the 120-day time limit under Federal Rule of Civil Procedure 4(m), which Chase contends expired on January 12, 2015.  Opp'n at 9–10; Def.'s Sur-Reply at 3.  But the Federal Rules of Civil Procedure do not apply to a civil action until it is in federal court.  See Fed. R. Civ. P. 81(c).  Hence, "service must be completed within 120 days of the date of removal, not the original filing in state court."  Henok v. Chase Home Fin., LLC, 890 F. Supp. 2d 65, 71 n.4 (D.D.C. 2012).  This case was not removed until November 24, 2014, so the 120-day deadline has not yet run.  Accordingly, the fact that Steward had not yet been served when McMullen filed her motion to remand is inconsequential to this analysis.[8]

Having determined that there are local defendants, the Court must now resolve whether "significant relief is sought" from these local defendants and whether the "alleged conduct" of these local defendants "forms a significant basis for the claims asserted by the proposed plaintiff class."  28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa)–(bb).  Both questions entail analysis of the complaint because "[t]he word 'sought' focuses attention on the plaintiff's claim for relief—that is, on what is 'sought' in the complaint—rather than on what may or may not be proved by

---

[7] Chase's exhibits include Steward's Maryland voting registration from 1991; a copy of a traffic violation entry on the website for the District Court for Prince George's County (MD) dated September 29, 2014, listing Steward's address in Maryland; and a copy of a list of violations on the website for the Circuit Court for Anne Arundel County (MD) dated August 2013 through June 2014, listing Steward at a different address in Maryland and noting that, as of April 8, 2014, the court received a "return notice—unable to forward" from Steward's mailing address.

[8] Steward was subsequently served on January 27, 2015, at a District of Columbia address.  See Return of Service/Aff. [ECF No. 22].

evidence," and likewise "the word 'alleged' . . . is based on what is alleged in the complaint rather than on what may or may not be proved by evidence."  <u>Coleman v. Estes Exp. Lines, Inc.</u>, 631 F.3d 1010, 1015 (9th Cir. 2011).

The Court begins with the "significant basis" requirement.  The Third Circuit has stated that "[w]hether the [local] defendant's alleged conduct is significant cannot be decided without comparing it to the alleged conduct of all the Defendants . . . . The local defendant's alleged conduct must be an important ground for the asserted claims in view of the alleged conduct of all the Defendants."  <u>Kaufman v. Allstate New Jersey Ins. Co.</u>, 561 F.3d 144, 157 (3d Cir. 2009).

Here, Chase does not dispute that the local defendants form a significant basis for the claims asserted by the proposed plaintiff class.  Indeed, the local defendants are allegedly responsible for setting in motion the actions that subsequently harmed McMullen and the rest of the putative class.  McMullen alleges that Steward "is the principal owner of Bullen Wellness and One World Fitness," and that these companies were instrumentalities used to further Steward's fraudulent scheme to defraud One World Fitness customers.  Am. Compl. ¶ 9.  Once unauthorized lines of credit had been obtained by Steward and the local businesses, Steward would then bill against the line of credit without the customer's knowledge.  <u>Id.</u>; <u>see also</u> <u>id.</u> ¶¶ 18–19, 29.  The banks—non-local defendants—then "aggressively pursued repayment of the invalid debt . . . [and] failed to provide any documentation [related to the alleged indebtedness]."  <u>Id.</u> ¶ 1.  As presented in the amended complaint, then, the local defendants' conduct is an integral part of the putative class's claims, and therefore forms "a significant basis for the claims asserted by the putative class."  <u>See</u> <u>Williams v. Homeland Ins. Co. of NY</u>, 657 F.3d 287, 291 (5th Cir. 2011) (finding that local defendant's conduct formed a significant basis for the claims asserted

where "[local defendant's] alleged conduct forms the basis of all claims against itself, but also forms a significant basis of the claims against the other defendants").

Regarding the "significant relief" requirement, McMullen argues that she "is seeking relief in the amount of approximately $32,130.00 for each member of the putative class for damages arising from the [l]ocal [d]efendants' conduct." Id. at 9. Chase's only response is that the putative class is unlikely to recover from the local defendants. But Chase does not explain how it squares its interpretation requiring plaintiff to show a "likelihood of recovery" with the language of the statute, which requires that the Court consider only relief sought, not relief likely to be obtained. See, e.g., Coffey, 581 F.3d at 1245 (noting that "[t]he statutory language is unambiguous" and a "'defendant from whom significant relief is sought' does not mean a 'defendant from whom significant relief may be obtained' . . . [;] nothing in the language of the statute . . . indicates Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of this preliminary consideration"). The amended complaint seeks damages from all defendants, and nothing in it suggests that the local defendants are nominal or that the putative class is not seeking significant monetary relief from them. See Am. Compl. ¶¶ 52, 59, 70, 79, 86, 95, 99, & Prayer for Relief.

Accordingly, McMullen has shown that there is at least one local defendant in this action from whom significant relief is sought by members of the plaintiff class, and whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class.

B. Citizenship of Proposed Plaintiff Class

The final element that McMullen must establish for the local controversy exception to apply is that "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed"—here, the District of

Columbia.  28 U.S.C. § 1332(d)(4)(A)(i)(I).  When the Court analyzes the citizenship of the proposed plaintiff class, "there must ordinarily be at least some facts in evidence from which the district court may make findings regarding class members' citizenship for purposes of CAFA's local controversy exception."  Mondragon v. Capitol One Auto Finance, 736 F.3d 880, 884 (9th Cir. 2013); see also In re Sprint Nextel Corp., 593 F.3d 669, 673–76 (7th Cir. 2010); Preston v. Tenet Healthsystem Memorial Med. Ctr., Inc., 485 F.3d 793, 798–802 (5th Cir. 2007).

McMullen contends that it is clear that "greater than two-third of all class members are citizens of the District of Columbia" based solely on the allegations in the amended complaint. Mot. at 7.  She points to paragraph 37, which states that "[t]he class shall be defined as former One World Fitness customers in the District of Columbia who received health care financing from GE Capital or Chase Health Advance."  Am. Compl. ¶ 37 (emphasis added).  Notably, however, defining the class as "customers in the District of Columbia" does not directly translate to "customers who are citizens of the District of Columbia."  Customers in the District of Columbia may have once been citizens of the District but are no more, or they could even be individuals who have never been citizens of the District.  Some health clubs may have many members who work in the District but who live in Maryland or Virginia.  And it is not clear that McMullen intends the putative class to be only citizens of the District of Columbia: she argues in her reply simply that "[g]iven the nature of health clubs whose customers typically live in the vicinity of the health club, it is reasonable to infer that two-thirds of the members of the proposed class are citizens of the District of Columbia."  Reply at 9.  Moreover, Chase points out that other sentences in the complaint use broader language, such as "One World fitness customers who received financing from Defendant Banks."  Opp'n at 8 (citing Am. Compl. ¶ 36).

In sum, McMullen has not clearly limited the class to District of Columbia citizens and has failed to provide any evidence concerning the citizenship of the putative class members. So although it may be likely that many putative class members are citizens of the District of Columbia, "[t]here is simply no evidence in the record to support a finding that the group of citizens outnumbers the group of non-citizens by more than two to one." Mondragon, 736 F.3d at 884; see also Sprint, 593 F.3d at 671–76 (vacating remand where the class as defined included only people who had a Kansas cell phone number, a Kansas billing address, and paid a Kansas fee, but plaintiff had not submitted any evidence of the class members' Kansas citizenship).

McMullen, anticipating that more is needed to meet her burden, requests an order for expedited discovery. Reply at 10. She asserts that the information pertaining to the class members' citizenship is in the possession of the defendants, specifically Chase and Synchrony Bank. Chase's sur-reply, which the Court will grant leave to file, argues simply that discovery is not merited because there are no local defendants. But the Court has rejected that argument.

Hence, the Court finds that expedited discovery on the issue of class citizenship is appropriate and required here. See Richins v. Hofstra Univ., 908 F. Supp. 2d 358, 360 (E.D.N.Y. 2012) (permitting limited, expedited discovery on the issue of the citizenship of members of the plaintiff class); see also Abdale v. North Shore-Long Island Jewish Health System, Inc., No. 13-CV-1238, 2014 WL 2945741, at *10 (E.D.N.Y. Jun. 30, 2014) (ordering discovery before ruling on applicability of local controversy exception); Barricks v. Barnes-Jewish Hosp., No. 11–CV–1386, 2012 WL 1230750, at *2 (E.D. Mo. Apr. 12, 2012) (same). Accordingly, the Court will grant limited discovery tailored to resolving whether more than two-thirds of the putative class are citizens of the District of Columbia. The parties will therefore be ordered to confer and submit a joint proposed discovery plan within thirty days of this

Memorandum Opinion and Order.  The discovery plan shall not exceed ninety days and shall specify the types of discovery to be conducted.

## **CONCLUSION**

For the reasons set forth above, the Court will deny (with leave to renew) the motion to remand and will order limited discovery regarding the citizenship of the putative plaintiff class. A separate Order has been issued on this date.


_____/s/_____
JOHN D. BATES
United States District Judge


Dated:  February 13, 2015